**O'HARA et al. v. LUCKENBACH S. S. CO.**

(Circuit Court of Appeals, Ninth Circuit. October 13, 1924.)

No. 4205.

**Seamen ⬥⟹12—Seamen held not entitled to discharge for violation of statute requiring division into watches.**

The primary object of Seamen's Act March 4, 1915, § 2 (Comp. St. § 8363b), requiring seamen to be divided into watches, is to fix hours of service and prevent overwork, and a vessel having three quartermasters divided into three watches of eight hours each, and three lookouts divided into three similar watches, the remainder of the crew doing ordinary shipwork for eight hours during the daytime and being off duty at night, did not violate the statute, and a quartermaster is not entitled to a discharge thereunder because of such arrangement of the crew.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Rudkin, Judge.

Suit in admiralty for wages by William O'Hara and Sven Tjersland against the Luckenbach Steamship Company. Decree for respondent, and libelants appeal. Affirmed.

H. W. Hutton, of San Francisco, Cal., for appellants.

Louis T. Hengstler and Frederick W. Dorr, both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and MORROW, Circuit Judges.

MORROW, Circuit Judge. Appellants (libelants below) were quartermasters employed on September 30, 1922, on the steamship Lewis Luckenbach for a voyage from New York to the Pacific Coast ports and return to the Atlantic Coast at a wage of $45 a month. Appellee (respondent below) is a corporation organized under the laws of Delaware, and is the owner of the steamship Lewis Luckenbach.

The libelants, in their amended libel, seek to recover of the respondent certain sums for seamen's wages—William O'Hara, the sum of $27.50; and Sven Tjersland, the sum of $28.50. The defense is desertion. The libelants shipped as seamen on the steamship Lewis Luckenbach for a voyage from the port of New York to Pacific ports of the United States and return to some port north of Cape Hatteras on the Atlantic Coast at the wages of $45 a month.

Upon the arrival of the vessel in San Francisco on November 15, 1922, libelants asked for a discharge without assigning any reason. The master refused to discharge them, because they had signed articles for the return voyage. They then demanded a certificate to the United States Marine Hospital, which was given them, but they were unable to secure discharge on account of disability. Libelants then claimed discharge on the ground that the ship was violating the law in not dividing its crew into watches, and demanded payment of their wages. The discharge was again refused. They left the service of the vessel and brought action to recover wages earned and double pay for each day having elapsed since November 15, 1922, when the wages were demanded.

Section 2 of the Act of March 4, 1915 (38 Stat. 1164 [Comp. St. § 8363b]), provides as follows:

"That in all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, bays, or sounds exclusively, the sailors shall, while at sea, be divided into at least two, and the firemen, oilers, and watertenders into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel.

* * *

"Whenever the master of any vessel shall fail to comply with this section, the seamen shall be entitled to discharge from such vessel and to receive the wages earned. But this section shall not apply to fishing or whaling vessels, or yachts."

There were thirteen sailors on board the vessel, three of whom were assigned to duty as quartermasters and were divided into three watches. Three were assigned to the lookout in the nighttime, and were also divided into three watches. The other seven did ordinary shipwork for eight hours during the day, and were off duty during the night.

Libelants, who were quartermasters, do not claim that they were on duty more than one watch out of every three, or that they were required to work more than 8 hours out of every 24. The complaint of these two quartermasters, the libelants herein, is not that they have suffered any unequal treatment in the labor required of them, or that they were not on duty successively, but that other members of the crew did not stand the regular wheel or lookout watch; that they were on duty only 8 hours during the daytime and off during the night. No complaint is made of unequal treatment by the other men, who were not engaged in the actual sailing or management of the vessel,

but were employed in painting and other ordinary shipwork during the day and were allowed off duty during the night.

The complaint is that, because these other men engaged in ordinary service were not divided into equal watches and required to do duty in watches at night, the two quartermasters claim they had the right to be discharged. The court below held that the primary object of the statute was to fix the hours of service and to prevent overwork, not to prescribe the number of seamen on each watch, and that the libelants were therefore not entitled to their discharge.

The duty of the quartermaster is to steer the ship, and obviously only one man at a time can be engaged in that duty. The addition of more men to a night watch would not relieve the quartermasters of their duties. They are selected for their qualification to steer the ship, and the safety of the ship often depends upon their qualification to perform that duty. The purpose of Congress was obviously to provide for the safety of the ship in the selection of qualified quartermasters and men for the lookout, and also to prevent overwork. The division of the men into watches, as disclosed by the evidence in this case, was not contrary to the statute.

The decree of the District Court is affirmed.